# 23-11648-H

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

———————

### SAMUEL BARNABY DYER CORIAT, SHEYLA DYER CORIAT, and PIERO DYER CORIAT,

**Plaintiffs-Appellants**

**v.**

### UNITED STATES OF AMERICA,

**Defendant-Appellee**

———————

## ON APPEAL FROM THE JUDGMENT OF THE U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

———————

## BRIEF FOR THE APPELLEE

———————

DAVID A. HUBBERT
  *Deputy Assistant Attorney General*

BRUCE R. ELLISEN          **(202) 514-2929**
JULIE CIAMPORCERO AVETTA    **(202) 616-2743**
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

*Of Counsel:*
MARKENZY LAPOINTE
  *United States Attorney*

15256054.1

*Dyer Coriat et al. v. United States* (11th Cir. – No. 23-11648-H)

### C-1 of 2

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, counsel for the United States hereby certify that, to the best of their knowledge, information, and belief, the following persons and entities have an interest in the outcome of this appeal:

Avetta, Julie C., Attorney, Appellate Section, Tax Division, United States Department of Justice

Dyer Coriat, Piero, Plaintiff-Appellant

Dyer Coriat, Samuel, Plaintiff-Appellant

Dyer Coriat, Sheyla, Plaintiff-Appellant

Ellisen, Bruce R., Attorney, Appellate Section, Tax Division, United States Department of Justice

Goodman, Hon. Jonathan, Magistrate Judge, United States District Court, Southern District of Florida

Hubbert, David A., Deputy Assistant Attorney General, Tax Division, United States Department of Justice

15256054.1

***Dyer Coriat et al. v. United States*** **(11th Cir. – No. 23-11648-H)**

## C-2 of 2

Kainen, Dennis G., Weisberg Kainen Mark, P.C., Counsel for

    Plaintiffs-Appellants

Lapointe, Markenzy, United States Attorney for the Southern District

    of Florida

Merino, Christopher, Trial Attorney, Tax Division, United States

    Department of Justice

Scola, Hon. Robert N., Judge, United States District Court, Southern

    District of Florida

Weisberg, Quinton L., Weisberg Kainen Mark, P.C., Counsel for

    Plaintiffs-Appellants

15256054.1

-i-

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to 11th Cir. R. 28-1(c) and Fed. R. App. P. 34(a), counsel for the United States respectfully inform this Court that they are prepared to present oral argument if the Court has questions that are not fully answered in the parties' briefs.

# TABLE OF CONTENTS

**Page**

Certificate of Interested Persons and

    Corporate Disclosure Statement ................................................... C-1

Statement regarding oral argument............................................................i

Table of contents.........................................................................................ii

Table of citations .......................................................................................iv

Statement of jurisdiction..........................................................................vii

    1.    Jurisdiction in the District Court.................................vii

    2.    Jurisdiction in the Court of Appeals...........................vii

Statement of the issue ................................................................................1

Statement of the case .................................................................................1

    (i)    Course of proceedings and disposition in the court

        below ...............................................................................1

    (ii)    Statement of the facts.....................................................2

        1.    The U.S.-Peru tax treaty ......................................2

        2.    IRS summonses issued pursuant to the U.S.-

            Peru tax treaty.......................................................4

        3.    Proceedings in the District Court ........................5

    (iii)    Statement of the standard or scope of review ..............9

-iii-

Summary of argument ...............................................................9

Argument ...................................................................................11

The District Court correctly dismissed taxpayers' petitions to
quash the IRS summonses.....................................................11

    A.    Introduction: IRS summonses, generally ...................11

    B.    Taxpayers have failed to rebut the Government's
           *prima facie* showing that the summonses were
           valid ..............................................................................13

           1.    A treaty partner's reason for requesting an
                  IRS summons is irrelevant to the validity of
                  the summons ........................................................15

           2.    The District Court did not abuse its
                  discretion in denying taxpayers' request for
                  an evidentiary hearing .......................................16

Conclusion.................................................................................21

Certificate of compliance ..........................................................22

Certificate of service.................................................................23

15256054.1

# TABLE OF CITATIONS

**Cases:**                                             **Page(s)**

*APA Excelsior III L.P. v. Premiere Techs., Inc.*,

    476 F.3d 1261 (11th Cir. 2007) ..................................................6, 14

*Chen Chi Wang v. United States*,

    757 F.2d 1000 (9th Cir. 1985) .......................................................17

*La Mura v. United States*,

    765 F.2d 974 (11th Cir. 1985) .......................................................13

\*   *Lidas, Inc. v. United States*,

    238 F.3d 1076 (9th Cir. 2001) .......................3, 7, 11, 12, 13, 14, 15

\*   *Mazurek v. United States*,

    271 F.3d 226 (5th Cir. 2001) ...................................7, 13, 14, 15, 17

*Nero Trading LLC v. U.S. Dep't of Treas.*,

    570 F.3d 1244 (11th Cir. 2009) .....................................................17

*Presley v. United States*,

    895 F.3d 1284 (11th Cir. 2018) ...........................................9, 12, 21

*Tiffany Fine Arts, Inc. v. United States*,

    469 U.S. 310 (1985) ......................................................................16

## Cases (cont.):                                                    Page(s)

*United States v. Clarke*,

    573 U.S. 248 (2014) ...........................................................9, 11, 17

*United States v. Medlin*,

    986 F.2d 463 (11th Cir. 1993) ......................................................19

*United States v. Miller*,

    425 U.S. 435 (1976) .......................................................................21

*United States v. Morse*,

    532 F.3d 1130 (11th Cir. 2008) .......................................................9

\*   *United States v. Powell*,

    379 U.S. 48 (1964) ..........................................6, 7, 9, 10, 12, 13, 15

\*   *United States v. Stuart*,

    489 U.S. 353 (1989) .............................................10, 12, 13, 14, 15

*United States v. Stuckey*,

    646 F.2d 1369 (9th Cir. 1981) ......................................................17

*Villarreal v. United States*,

    524 Fed. Appx. 419 (10th Cir. 2013) ............................................16

*Williams v. McNeil*,

    557 F.3d 1287 (11th Cir. 2009) ....................................................18

15256054.1

**Statutes:** **Page(s)**

Internal Revenue Code (26 U.S.C.)

§ 7602 ................................................................................... 3

§ 7602(a) ............................................................................... 11

§ 7609(b) ...........................................................................vii, 1

§ 7609(b)(2) .......................................................................... 12

§ 7609(b)(2)(A) ....................................................................vii

§ 7609(h)(1) ................................................................... vii, viii

Judiciary and Judicial Procedure (28 U.S.C.)

§ 1291 ................................................................................. viii

§ 1331 ................................................................................... vii

§ 1340 ................................................................................... vii

§ 2107(b) ............................................................................. viii

**Other Authorities**

Fed. R. App. P. 4(a)(1)(B) .................................................... viii

S. Rep. No. 938, 94th Cong. 2d Sess. 370–71 (1976),

    *reprinted in* 1976 U.S.C.C.A.N. 2897 ..........................................20

\* Cases or authorities chiefly relied upon have asterisks.

15256054.1

## STATEMENT OF JURISDICTION

### 1.    Jurisdiction in the District Court

On August 22, 2022, the Internal Revenue Service (IRS) issued summonses to Truist Bank and Wells Fargo Bank pursuant to treaty requests from the Government of Peru, to aid in determining the Peruvian income tax liabilities of Samuel Barnaby Dyer Coriat, Piero Martin Dyer Coriat, and Sheyla Dyer Coriat ("taxpayers") for tax years 2016, 2017, and 2018. (Doc. 25-1.)[1]  Taxpayers filed timely petitions to quash the summonses on August 31, 2023 (Piero) and September 1, 2023 (Samuel and Sheyla).  (Doc. 1; S. D. Fla. Case No. 22-cv-22785, doc. 1; Case No. 22-cv-22777, doc. 1.)  *See* I.R.C. (26 U.S.C.) § 7609(b). The District Court had jurisdiction under I.R.C. § 7609(b)(2)(A), (h)(1), and 28 U.S.C. §§ 1331, 1340.

### 2.    Jurisdiction in the Court of Appeals

The District Court consolidated taxpayers' petitions into a single proceeding (Doc. 10), which it resolved in an order of dismissal on April

---

[1] "Doc." citations are to docket entries in the consolidated proceeding below, S.D. Fla. Case No. 22-cv-22778, as numbered by the Clerk of the District Court.  "Br." references are to the pages of appellants' opening brief.

-viii-

20, 2023.  (Doc. 29.)  This order disposed of all the parties' claims and is

"a final order which may be appealed."  I.R.C. § 7609(h)(1).  Taxpayers

filed a timely notice of appeal on May 12, 2023.  (Doc. 30.)  *See* 28 U.S.C.

§ 2107(b); Fed. R. App. P. 4(a)(1)(B).  This Court has jurisdiction under

28 U.S.C. § 1291.

-1-

## STATEMENT OF THE ISSUE

Whether the District Court was required, before dismissing petitions to quash IRS summonses issued under a facially proper treaty request, to hold an evidentiary hearing into whether foreign officials had made the request in good faith.

## STATEMENT OF THE CASE

**(i)    Course of proceedings and disposition in the court below**

Taxpayers each filed a separate petition in the District Court under I.R.C. § 7609(b), seeking to quash summonses the IRS issued to Truist Bank and Wells Fargo Bank pursuant to facially proper requests from the Peruvian tax authority under the U.S.-Peru tax treaty.[2]  (Doc. 1; *see* S. D. Fla. Case No. 22-cv-22785, doc. 1; Case No. 22-cv-22777, doc. 1.)  The District Court consolidated taxpayers' petitions into a single proceeding based on common questions of law and fact.  (Doc. 10.)

The Government moved to dismiss taxpayers' petitions (Doc. 11), and taxpayers countered with a request for an evidentiary hearing on

---

[2]  The treaty's formal name is the "Agreement Between the Government of the Republic of Peru and the Government of the United States of America for the Exchange of Tax Information (1990)."  (Doc. 18-1.)

15256054.1

-2-

their claims that the Peruvian treaty request was issued in bad faith. (Doc. 15.)  Magistrate Judge Goodman recommended granting the Government's motion to dismiss.  (Doc. 22.)  Over taxpayers' objection, the District Court adopted the magistrate judge's findings and recommendations, granted the United States' motion to dismiss, and denied taxpayers' motion for an evidentiary hearing.  (Doc. 29.) Taxpayers now appeal.  (Doc. 30.)

### (ii)    Statement of the facts

### 1.    The U.S.-Peru tax treaty

The United States and Peru "have agreed to provide each other assistance through the exchange of information" in order "to assure the accurate determination and collection of taxes, to prevent tax fraud and evasion, and to develop better sources of information for tax matters[.]" (Doc. 18-1 at 2.)  As relevant here, Article 4 of the U.S.-Peru tax treaty requires the U.S. and Peruvian competent authorities—respectively, the IRS and the Superintendencia Nacional de Aduanas y de Administración Tributaria (SUNAT)—to "exchange information to administer and enforce the domestic laws of the [United States and Peru] corresponding to the taxes covered by this Agreement" (Doc. 18-1

at 4), which include Peruvian income taxes.  (Doc. 18-1 at 3.)  The treaty requires each taxing authority to "adopt[] and implement[] the procedures that are necessary to ensure" the transmission of information "which is likely to be relevant to, and contribute significantly to," *inter alia*, "the determination, assessment, and collection of tax, the recovery and enforcement of tax claims, as well as the investigation or prosecution of tax crimes or crimes involving the contravention of tax administration."  (Doc. 18-1 at 4.)

If the IRS determines that SUNAT has made a facially proper treaty request for information governed by the treaty, the IRS must "obtain [the information] and provide it in the same form, as if the tax of [Peru] were the tax of the [United States]."  (Doc. 18-1 at 5.)  The IRS may therefore use the broad summons authority set out in I.R.C. § 7602.  *See Lidas, Inc. v. United States*, 238 F.3d 1076, 1081 (9th Cir. 2001) (discussing similar provision in U.S.-France tax treaty).

Once it obtains the relevant information, the IRS must disclose that information to SUNAT.  SUNAT may disclose the information "only to authorities, including judicial and administrative bodies involved in the determination, assessment, collection, and

administration of the taxes which are the subject of" the treaty.  (Doc.

18-1 at 6.)

### 2.    IRS summonses issued pursuant to the U.S.-Peru tax treaty

Taxpayers are siblings who are citizens and residents of Peru.

(Doc. 22 at 2.)  On December 28, 2021, SUNAT, the Peruvian taxing

authority, submitted exchange-of-information requests to the IRS

seeking information in connection with the Peruvian income tax

examinations of Sheyla Dyer Coriat and Piero Martin Dyer Coriat.

(Doc. 11, Exs. 2 and 3 ¶3.)  Within weeks, on February 8, 2022, SUNAT

sent a corresponding exchange-of-information request to the IRS with

respect to their brother Samuel Barnaby Dyer Coriat's Peruvian income

tax examination.  (*Id*., Ex. 1 ¶6.)  SUNAT's requests explained that the

Dyer Coriat siblings are Peruvian taxpayers and that their 2016, 2017,

and 2018 income tax liabilities were under examination by Peru.  (*Id*.,

Exs. 1, 2, and 3 ¶6.)  Consequently, SUNAT sought the IRS' assistance

to obtain bank records for 2016 through 2018 from taxpayers' U.S.

accounts at Truist and Wells Fargo.  (*Id*., 11, Exs. 1, 2, and 3 ¶8.)

The IRS (the U.S. competent authority) confirmed with SUNAT

that SUNAT "could obtain account information located in Peru in the

15256054.1

context of a domestic examination under Peruvian law and in the normal course of tax administration" and that SUNAT could "obtain, and exchange, bank account information located in Peru pursuant to the U.S.-Peru [tax treaty]." (Doc. 11, Exs. 1, 2, and 3 ¶14.)

The IRS concluded that there was a "reasonable basis to believe that the summons may produce information relevant to Peru's examination." (*Id.*, Exs. 1, 2, and 3 ¶16.) The IRS then honored Peru's request and served summonses on Truist and Wells Fargo on or about August 23, 2022. (*Id.*, Exs. 4, 5, and 6 ¶4.) The summonses requested copies of taxpayers' account opening documents, as well as monthly account statements, certifications of withholding status, and information reflecting amounts withheld for the tax periods from January 1, 2016 through December 31, 2018. (*Id.*, Exs. 4.A, 5.A, and 6.A.)

### 3.    Proceedings in the District Court

Taxpayers timely petitioned the District Court to quash the IRS summonses, arguing, *inter alia*, that the United States had "failed to identify a legitimate good faith purpose for its request," and that the Peruvian government was seeking information it could not legally

-6-

obtain under Peruvian law.[3] (*See* Doc. 1 at ¶¶ 11-15.) In particular,

taxpayers contended that "the requested information sought by Peru as

the requesting nation violates the Peruvian Constitution and applicable

Peruvian statutes because it requests certain private information which

is precluded under Peruvian law without the Peruvian government

complying with certain conditions precedent." (*Id.* at ¶ 14.) Taxpayers'

petitions did not assert that the IRS summonses were overbroad. (Doc.

1.)

In its motion to dismiss taxpayers' petitions to quash (Doc. 11),

the United States relied on declarations from IRS employees Tina

Masuda and Floyd Penn to make the *prima facie* showing required by

*United States v. Powell*, 379 U.S. 48, 57-58 (1964)—*i.e.*, that the IRS

issued the summonses for a legitimate purpose; the information sought

is relevant to that purpose; the IRS does not already possess the

information; and the IRS followed the required administrative steps.

---

[3] Taxpayers also contended that the summonses "failed to identify the kind of investigation against the Petitioner," and that the requests were inappropriate because the Dyer Coriat siblings were not U.S. taxpayers. As taxpayers have not renewed these arguments in their opening brief on appeal, they are waived. *APA Excelsior III L.P. v. Premiere Techs., Inc.*, 476 F.3d 1261, 1269 (11th Cir. 2007) (this Court will "not consider claims not raised in a party's initial brief").

(Doc. 11, Exs. 1-6.)  The United States noted that it is not required to establish the good faith or local legal rights of a foreign treaty partner making the request, but must only show that the IRS acted in good faith in responding to the treaty request.  (Doc. 11 at 7, citing *Mazurek v. United States*, 271 F.3d 226, 231 (5th Cir. 2001); *Lidas, Inc. v. United States*, 238 F.3d 1076, 1082 (9th Cir. 2001)).

Taxpayers conceded in response that the "IRS has made its *prima facie* case for enforcement of the summons [under *Powell*] by filing a sworn affidavit by the investigating agent."  (Doc. 18 at 2.)  They maintained, however, that this was insufficient to demonstrate the good faith of the United States in complying with the treaty request, "in light of the well-documented problems within the Peruvian government and ongoing corruption."  (Doc. 18 at 5-8.)  Taxpayers requested an evidentiary hearing to demonstrate that "[t]he US-Peru [tax treaty] only permits Peru to request bank information if it complies with its Constitution," which, in taxpayers' view, would establish that the IRS issued the summonses for an improper purpose.   (Doc. 18 at 8.)  They again made no assertion that the challenged summonses were overbroad.  (Doc. 18.)

-8-

Magistrate Judge Goodman issued a report and recommendations that the Government's motion to dismiss be granted. (Doc. 22.) Judge Goodman's report noted that no evidentiary hearing was necessary, since taxpayers had "conceded that the IRS has sufficiently established a *prima facie* case for the enforcement of the summonses" and the inquiry they urged into the good faith of the foreign requestor "is not a discretionary decision—it is an inquiry which [the District] Court is prohibited from making." (Doc. 22 at 8.)

In their objection to the magistrate judge's report and recommendations, taxpayers argued for the first time that the IRS summonses were overbroad. (Doc. 25 at 3-6.) The District Court held that taxpayers had failed to preserve this argument because they did not raise it before the magistrate judge, and that in any event, they lacked standing to challenge the scope of a summons served on a third party. (Doc. 29 at 2-3.) Because taxpayers had raised no other meritorious challenge to the magistrate judge's report, the District Court adopted his recommendation and ordered that taxpayers' petitions to quash the IRS summonses be dismissed. (Doc. 29 at 3.)

Taxpayers timely appealed the judgment of the District Court to this Court. (Doc. 30.) They also sought a stay pending appeal of the District Court's judgment (Doc. 31), which that court denied on June 2, 2023 (Doc. 35), and this Court likewise denied on August 11, 2023.

### (iii) Statement of the standard or scope of review

This Court "will not reverse an order enforcing an IRS summons unless it is 'clearly erroneous.'" *Presley v. United States*, 895 F.3d 1284, 1288 (11th Cir. 2018), *quoting United States v. Morse*, 532 F.3d 1130, 1131 (11th Cir. 2008). A district court's decision to deny an evidentiary hearing is reviewed for abuse of discretion. *United States v. Clarke*, 573 U.S. 248, 255 (2014).

## SUMMARY OF ARGUMENT

The District Court correctly dismissed taxpayers' petitions to quash IRS summonses. To obtain a dismissal of a petition to quash an IRS summons issued at the facially proper request of a treaty partner, the Government must show that it has met the requirements set out in *United States v. Powell*, 379 U.S. 48 (1964). Once the Government has made that minimal *prima facie* showing of the IRS's good faith in issuing the summons, a heavy burden shifts to the petitioner to "show

that the IRS is attempting to abuse the court's process" or has otherwise failed to satisfy the *Powell* factors. *United States v. Stuart*, 489 U.S. 353, 359−60 (1989).

It is undisputed that the Government made the requisite *prima facie* showing here, and taxpayers have made no effort to rebut any of the *Powell* factors. Taxpayers argue that the District Court should have heard evidence regarding their allegations of Peru's bad faith in requesting the summonses. Such evidence, if any, is irrelevant to the inquiry here. That inquiry is whether "the IRS is attempting to abuse the court's process," not whether a treaty partner is attempting to do so. *Stuart*, 489 U.S. at 360. "So long as the IRS itself acts in good faith [under *Powell*] and complies with applicable statutes, it is entitled to enforcement of its summons." *Id.* at 370. Because there is no dispute that the *Powell* factors have been met, and taxpayers have not alleged that the IRS acted in bad faith in issuing the summonses, they have not demonstrated—and cannot demonstrate—any clear error in the District Court's dismissal of their petition to quash.

The District Court did not abuse its discretion in denying taxpayers' request for discovery and an evidentiary hearing on issues

irrelevant to the good faith of the IRS.  Nor did that court abuse its

discretion in rejecting taxpayers' argument that the summonses were

overbroad, which was not timely raised or properly preserved below.

The overbreadth argument lacks merit in any event.

## ARGUMENT

### The District Court correctly dismissed taxpayers' petitions to quash the IRS summonses

### A.    Introduction: IRS summonses, generally

Congress has given the IRS broad authority to issue summonses

requesting "any books, papers, records, or other data which may be

relevant" to "determining the liability of any person for any internal

revenue tax."  I.R.C. § 7602(a); *see United States v. Clarke*, 573 U.S.

248, 250 (2014).  The IRS employs this same broad authority "to obtain

information requested by" a tax treaty partner.  *Lidas, Inc. v. United

States*, 238 F.3d 1076, 1081 (9th Cir. 2001).  In particular, the U.S.-Peru

tax treaty provides that "if the information available in the tax files of

the requested State is not sufficient to enable compliance with the

request, that State shall take all relevant measures to provide the

applicant State with the information requested."  (Doc. 18-1 at 4.)

A taxpayer who receives notice that the IRS has issued a summons to a third party requesting the taxpayer's records can petition to quash the summons in a summary district court proceeding. *See* I.R.C. § 7609(b)(2). To prevail, the Government must make a *prima facie* showing that the IRS acted in "'good faith' in issuing the summons." *Lidas*, 238 F.3d at 1081−82; *see Presley*, 895 F.3d at 1289. Specifically, the Government must demonstrate that: "(1) the investigation has a legitimate purpose, (2) the information summoned is relevant to that purpose, (3) the IRS does not already possess the documents sought, and (4) the IRS has followed the procedural steps required by the tax code." *Presley*, 895 F.3d at 1289 (citing *United States v. Powell*, 379 U.S 48, 57−58 (1964)).

The same threshold requirement "applies where the IRS issues a summons at the request of a tax treaty partner." *Lidas*, 238 F.3d at 1082 (citing *United States v. Stuart*, 489 U.S. 353, 370 (1989)). In such a case, "the IRS need not establish the good faith of the requesting nation." *Id.* "'So long as the IRS itself acts in good faith [under *Powell*] . . . and complies with applicable statutes, it is entitled to enforcement

of its summons.'" *Id.* (quoting *Stuart*, 489 U.S. at 370 (alterations in original)).

‘The government's burden of showing relevance in this context is slight." *La Mura v. United States*, 765 F.2d 974, 981 (11th Cir. 1985); *see also Mazurek v. United States*, 271 F.3d 226, 230 (5th Cir. 2001). Declarations from the U.S. competent authority and IRS employees are sufficient to establish the Government's *prima facie* case. *See Mazurek,* 271 F.3d at 230; *Lidas*, 238 F.3d at 1082.

Once the Government has made its "minimal" *prima facie* showing, *Mazurek,* 271 F.3d at 230, a court should deny a petition to quash "unless the taxpayer can show that the IRS is attempting to abuse the court's process" or has otherwise failed to satisfy the *Powell* factors. *Stuart*, 489 U.S. at 360; *see also Lidas*, 238 F.3d at 1082. "[T]he taxpayer bears a heavy burden" on rebuttal. *Lidas*, 238 F.3d at 1082 (internal quotation omitted); *Mazurek,* 271 F.3d at 230.

**B.** **Taxpayers have failed to rebut the Government's *prima facie* showing that the summonses were valid**

Taxpayers conceded, and the District Court correctly held, that the Government made its *prima facie* showing that the IRS summonses were valid. (Doc. 22 at 4; Doc. 29 at 2.) Taxpayers did not dispute the

facts established in the Government's declarations: namely, that each

summons was issued for the legitimate purpose of meeting the United

States' treaty obligations; that the information sought could be relevant

to the Peruvian tax authority's examination; that neither the IRS nor

SUNAT possessed the requested information; and that the IRS had

complied with all administrative requirements.  (Doc. 22 at 4.)[4]

In their opening brief, taxpayers do not challenge the District

Court's conclusion that the summonses are valid, nor do they contend

that the IRS acted in bad faith.  Those arguments are therefore waived.

*See APA Excelsior III L.P. v. Premiere Techs., Inc.*, 476 F.3d 1261, 1269

(11th Cir. 2007).  Rather, taxpayers argue only that that the District

Court should have held an evidentiary hearing, in light of their

allegations of bad faith on the part of the Peruvian government (Br. 4)

and the overbreadth of the IRS summonses (Br. 5-6).  Taxpayers can

show no abuse of discretion in the District Court's denial of their

request for an evidentiary hearing on either count.

---

[4] The declarations are similar to the declarations and affidavits
submitted in other treaty-partner summons cases decided in favor of
the Government.  *See, e.g., Stuart*, 489 U.S. at 360; *Lidas*, 238 F.3d at
1082; *Mazurek*, 271 F.3d at 230.

-15-

### 1.    A treaty partner's reason for requesting an IRS summons is irrelevant to the validity of the summons

As the District Court correctly held, the motivations of the requesting treaty partner do not factor into the court's analysis in a proceeding to enforce (or quash) the resulting summons.  Rather, the relevant inquiry under *Powell* is whether "the IRS is attempting to abuse the court's process."  *Stuart*, 489 U.S. at 360 (noting that the taxpayers "nowhere alleged that the IRS was trying to use the District Court's process for some improper purpose").  The Supreme Court held in *Stuart* that "[s]o long as the IRS itself acts in good faith [under *Powell*] and complies with applicable statutes" when it issues a summons pursuant to a treaty partner's facially proper request, "it is entitled to enforcement of its summons."  *Id.* at 370; *see also id.* at 356.

The Ninth Circuit read *Stuart* to establish a rule that, "where the IRS issues a summons at the request of a tax treaty partner . . . the IRS need not establish the good faith of the requesting nation." *Lidas*, 238 F.3d at 1082.  The Fifth Circuit also understood *Stuart* to have held that "[a]s long as the IRS acts in good faith, it need not also attest to – much lest prove – the good faith of the requesting nation."  *Mazurek v.*

*United States*, 271 F.3d 226, 231 (5th Cir. 2001).   Similarly, the Tenth

Circuit agreed that, in reviewing a summons issued in response to a

treaty request by Mexico's taxing authority, "Mexico's good faith is

irrelevant; what matters is the IRS's good faith in issuing the

summons." *Villarreal v. United States*, 524 F. App'x 419, 423 (10th Cir.

2013).  Because taxpayers do not contend that the IRS acted in bad

faith, this Court should affirm the District Court's dismissal of their

petitions to quash.

> ## 2.    The District Court did not abuse its discretion in denying taxpayers' request for an evidentiary hearing

The District Court also properly exercised its discretion to deny

taxpayers' request for an evidentiary hearing.  (*See* Br. 4-6.)  *See*

*Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 324 n.7 (1985)

(district court acted within its discretion to conclude that an evidentiary

hearing on the question of enforcement of an IRS summons was

unnecessary).  To obtain an evidentiary hearing, a taxpayer must "point

to specific facts or circumstances plausibly raising an inference of bad

faith.  Naked allegations of improper purpose are not enough: The

taxpayer must offer some credible evidence supporting his charge."

*Clarke*, 573 U.S. at 254. If the district court still "is not convinced that the summons[ ] w[as] issued for a proper purpose," "[d]iscovery is then warranted." *United States v. Stuckey*, 646 F.2d 1369, 1374 (9th Cir. 1981).

A person seeking to quash a summons thus is not entitled to an evidentiary hearing unless he can point to credible evidence raising an inference of bad faith on the part of the IRS.[5] Because taxpayers did not offer any credible evidence that the IRS acted in bad faith (Doc. 29 at 2, Doc. 22 at 8), there was nothing to hear at an evidentiary hearing, and the District Court correctly rejected taxpayers' request. *See Mazurek*, 271 F.3d at 235 (holding "that the district court acted well within its discretion in denying discovery and an evidentiary hearing"). This was not the exceptional summary summons proceeding that warrants an evidentiary hearing or discovery. *See Chen Chi Wang v. United States*, 757 F.2d 1000, 1004 (9th Cir. 1985) ("The district court in a summary summons enforcement proceeding has great discretion to

---

[5] The case on which taxpayers rely (Br. 5) for the contrary proposition, *Nero Trading LLC v. U.S. Dep't of Treas.*, 570 F.3d 1244, 1249 (11th Cir. 2009), was abrogated by the Supreme Court and is no longer good law. *See Clarke,* 573 U.S. at 254.

restrict or deny discovery; discovery in such a proceeding is the exception rather than the rule.").

Nor is there merit to taxpayers' afterthought of an argument that the summonses were overbroad, because the summonses allegedly requested a more complete set of bank records than those indicated on the initial requests from SUNAT. (Br. 5.) The District Court correctly concluded that, because taxpayers did not raise this argument before the magistrate judge, the court was not required to consider it. (Doc. 29 at 2-3.) *See Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) (district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge).

Taxpayers raised their overbreadth argument for the first time in their objection to the magistrate judge's report and recommendations. (Doc. 25 at 3-6.) The District Court observed (Doc. 29 at 2-3) that taxpayer's argument relied on a Peruvian government report that was issued on November 8, 2022 (Doc. 25 at 3-5), and that taxpayers could have, but did not, raise the alleged overbreadth of the summonses in their response to the Government's motion to dismiss, which they filed on December 12, 2022 (Doc. 18). Taxpayers asserted that they had

"filed a constitutional claim in Peru" (Doc. 25 at 3) and that the report on which they relied was "the Peruvian tax authority's response" (Doc. 25 at 4). Since taxpayers offered no explanation for their further assertion that they "receiv[ed] this response in the last number of days" (Doc. 25 at 5; *see* Br. 6), the District Court correctly found that they did not "provide any reason why they may have been unable" to rely on the November 8 report in their December 12 reply. (Doc. 29 at 3.)

Moreover, taxpayers' claim of overbreadth is incorrect as a matter of law. A summons is not overbroad simply because it seeks additional information that the IRS believes is relevant to a treaty request. Rather, a "summons is overbroad if it does not advise the summoned party what is required of him with sufficient specificity to permit him to respond adequately to the summons." *United States v. Medlin*, 986 F.2d 463, 467 (11th Cir. 1993) (internal quotation omitted). Other than a non-specific suggestion that it is somehow "difficult to determine the IRS's intentions in issuing the summons and whether it was appropriate under the treaty" (Br. 5), taxpayers do not allege that the summonses here were in any way unclear on the information sought.

-20-

The District Court correctly held that taxpayers "lack standing to
object to any purported overbreadth of the summonses," because the
summonses were "directed to third parties—specifically, the banks
holding the Petitioners' accounts—not to the Petitioners themselves."
(Doc. 29 at 2.)  *See* S. Rep. No. 94-938 at 370–71 (2d Sess.) (1976),
*reprinted in* 1976 U.S.C.C.A.N. 2897, 3205 (a taxpayer entitled to notice
of IRS third-party summons will "not be permitted to assert as defenses
to enforcement issues which only affect the interests of the third-party
record keeper").  Taxpayers complain that this standing requirement
"disregards the fundamental principles of due process" and exposes
them to invasions of privacy (Br. 6), but do not dispute that the
requirement applies to them, nor that they fail to meet it.

At all events, privacy concerns do not impede the enforcement of
an IRS third-party summons: as this Court has held, "a party lacks a
reasonable expectation of privacy under the Fourth Amendment in
information 'revealed to a third party and conveyed by [that third party]
to Government authorities, even if the information is revealed on the
assumption that it will be used only for a limited purpose and the
confidence placed in the third party will not be betrayed.'" *Presley*, 895

F.3d at 1291, quoting *United States v. Miller*, 425 U.S. 435, 443 (1976).

Taxpayers' objections to the summonses are thus without merit.

## CONCLUSION

The judgment of the District Court should be affirmed.

Respectfully submitted,

DAVID A. HUBBERT
  *Deputy Assistant Attorney General*

/s/ Julie Ciamporcero Avetta

BRUCE R. ELLISEN                (202) 514-2929
JULIE CIAMPORCERO AVETTA        (202) 616-2743
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*
  *Appellate.TaxCivil@usdoj.gov*
  *Julie.C.Avetta@usdoj.gov*

*Of Counsel:*
MARKENZY LAPOINTE
  *United States Attorney*

SEPTEMBER 15, 2023

-22-

# CERTIFICATE OF COMPLIANCE

## With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

Check the appropriate box in section 1, and check the box in section 2.

### 1. Type-Volume

[X]    This document complies with the word limit of FRAP 32(a)(7)(B) because, excluding the parts of the document exempted by FRAP 32(f), this document contains <u>4,327</u> words.

**or**

[ ]    This brief complies with the line limit of FRAP ____ because, excluding the parts of the brief exempted by FRAP 32(f) and ____, this brief uses a monospaced typeface and contains ____ lines of text.

### 2. Typeface and Type-Style

[X]    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6).

(s)   <u>/s/ Julie Ciamporcero Avetta</u>

Attorney for  <u>United States</u>

Dated:  <u>September 15, 2023</u>

15256054.1

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of September, 2023, this brief was filed with the Clerk of the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system, and seven (7) paper copies were sent to the Clerk by First Class Mail.  All parties are CM/ECF users and have been served by CM/ECF.

/s/ Julie Ciamporcero Avetta
Julie Ciamporcero Avetta
*Attorney*

15256054.1